IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| Leslie-Aina WEIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. No. 10-00603 ACK-BMK |
| | ) |
| USAA CASUALTY INSURANCE CO., | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING IN PART AND CONTINUING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. PROCEDURAL BACKGROUND

On September 1, 2010, Plaintiff Leslie-Aina Weight filed a complaint in the Circuit Court of the Third Circuit, State of Hawai'i, seeking, among other things, a declaration that Defendant USAA Casualty Insurance Co. ("USAA") has a duty to defend and indemnify her with regard to a separate lawsuit that is pending against her in that court. (Compl. at 8, ECF No. 1 Ex. A.) USAA removed the case to this Court under 28 U.S.C. § 1441(a), invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal at 2-3, ECF No. 1.)

Both parties have moved for summary judgment and have filed memoranda, concise statements of fact, responses, and

-1-

replies in support of their positions.[1/]  The parties appeared

before the Court on March 14, 2011.[2/]

---

[1/] USAA's filings include its motion for summary judgment
("USAA Mot.") (ECF No. 11); its memorandum in support ("USAA Mot.
Mem.") (ECF No. 11 Attach. 1); its separate and concise statement
of material facts in support ("USAA Mot. CSF") (ECF No. 12); its
memorandum in opposition to Weight's motion for summary judgment
("USAA Opp'n") (ECF No. 23); its separate and concise statement
of material facts in opposition ("USAA Opp'n CSF") (ECF No. 24);
and its reply memorandum in support of its motion for summary
judgment ("USAA Reply") (ECF No. 27).

Weight's filings include her motion for partial summary
judgment ("Weight Mot.") (ECF No. 13); her memorandum in support
("Weight Mot. Mem.") (ECF No. 13 Attach. 1); her concise
statement of facts in support ("Weight Mot. CSF") (ECF No. 14);
her memorandum in opposition to USAA's motion for summary
judgment ("Weight Opp'n") (ECF No. 25); her separate and concise
statement of material facts in opposition ("Weight Opp'n CSF");
and her reply memorandum in support of her motion for summary
judgment ("Weight Reply") (ECF No. 28).

[2/] Weight's complaint includes two counts.  Count I seeks
declaratory relief concerning USAA's duties to defend the
underlying action and indemnify Weight for any damages arising
from that action, and Count II alleges that USAA breached its
duty of good faith and fair dealing in denying Weight's request
for a defense in the underlying action.  (Compl. at 5–7, 7–8.)
Weight only seeks summary judgment as to Count I, while USAA
seeks summary judgment as to both counts.  (Weight Mot. at 1;
USAA Mot. Mem. at 19–20.)  The parties agree, however, that if
the policy does not entitle Weight to a defense, then USAA's
denial of a defense was not in bad faith.  (Stipulation and Order
Regarding Procedures ¶ 4, ECF No. 21.)  They wish to avoid
"discovery-related disputes and expenses" as to Count II if that
count is moot.  (Id. ¶¶ 4–5.)  The parties therefore proposed,
and the Court approved, the following procedure:

> [I]n the event that the Court grants summary judgment
> to [USAA] as to Count I of the Complaint, it should
> also grant summary judgment to [USAA] on Count II of
> the Complaint, but, in the event that the Court denies
> summary judgment to [USAA] on Count I of the Complaint,
> and either rules for [Weight] on Count I or denies both
> parties' summary judgment motions as to Count I, the
> Court should defer ruling on Count II of the Complaint
> (continued...)

## II. FACTUAL BACKGROUND[3/]

### A.        The Underlying Action

On July 1, 2010, David Jung, along with six other named plaintiffs, filed a complaint against Weight in the Circuit Court of the Third Circuit, State of Hawai'i, seeking injunctive relief along with special, general, and punitive damages. (Weight Mot. CSF Ex. 2 ("Underlying Compl.") at 4.)

The complaint alleges that the plaintiffs are the owners and occupiers of land neighboring Weight's property in Hilo, on the Island of Hawai'i. (Id. ¶ 1–2.) It further alleges that since 1990 Weight has improperly, wrongfully, and illegally maintained a stream diversion on her land that has prevented a stream from following its "natural and well established course" through Weight's and (at least some of) the plaintiffs' properties. (Id. ¶¶ 3–5.) The "stream diversion mechanism" allegedly includes "a wall, sluice gate, and other impediments in the natural channel of the stream." (Id. ¶ 5.)

The complaint includes several allegations concerning

_____

[2/] (...continued)
and continue the hearing as to [USAA's] Motion for
Summary Judgment on Count II . . . .

(Id. ¶ 6.) The Court will follow this procedure in addressing these motions.

[3/] The facts as recited in this Order are for the purpose of disposing of these motions and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

the effects of Weight's stream diversion. It alleges that the diversion has caused "great irreparable injury to Plaintiffs' lands and great damage to Plaintiffs in that such decreased flow caused a large portion of Plaintiffs' land to be denuded of the bubbling stream and the water to nourish plants and fish." (Id. ¶ 6.) It also alleges that a "substantial portion of all Plaintiffs' lands formerly were benefitted by the natural flow of the stream . . . over and onto Plaintiffs' land providing water for koi ponds, plant irrigation and aesthetic values," that the diversion "damaged and continues to damage Plaintiffs' property by deprivation of the water diverted," and that "[a]s a result of [Weight]'s wrongful and illegal acts, Plaintiffs have been deprived of the use of a substantial portion of Plaintiffs' land." (Id. ¶¶ 6-8.)

On July 8, 2010, Weight requested "both defense and indemnity" as to the underlying complaint in a fax sent by Weight's attorney to USAA. (Weight Mot. CSF Ex. 3.) USAA denied a defense of the underlying action and indemnification of any resulting damages in a letter dated August 3, 2010. (Id. Ex. 4.) USAA's stated grounds for the denial were that "no specific claims are being made against [Weight] for property damage or bodily injury" and that "the circumstances which led to the filing of the lawsuit . . . clearly are not the result of an accident" because "the control of the floodgate by Ms. Weight is

an intentional act." (Id.)

**B.**        **The Policy**

The basis for Weight's claim against USAA is an insurance policy, issued by USAA to Weight and consisting of two forms, one called "Homeowners 3R Special Form (04-93)," and one called "Hawaii Special Provisions, HO-HI (06-99)." (Weight Mot. CSF Ex. 1 at 1-17 ("Policy"); id. at 18-21 ("Hawaii Special Provisions").) The policy's personal-liability coverage provides for both indemnification and a defense in certain actions against Weight:

> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
> 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay or tender for damage resulting from the occurrence equals our limit of liability. This coverage does not provide defense to any insured for criminal prosecution or proceedings.
>
> We will not pay for punitive damages or exemplary damages, fines, or penalties.

(Hawaii Special Provisions at 2.)[4/]

The personal-liability coverage excludes, among other things, "bodily injury or property damage caused by the intentional or purposeful acts of any insured, including conduct that would reasonably be expected to result in bodily injury to any person or property damage to any property." (Policy at 12.)

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in bodily injury or property damage"; and defines "property damage" as "physical damage to, or destruction of tangible property, including loss of use of this property." (Policy at 1 (lettering and line breaks omitted).) The term "accident" is not defined. (Id.)

### III. STANDARD

**A.**       **Summary Judgment**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Summary judgment is therefore appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[4/] USAA begins its argument by stating that one reason summary judgment should be granted in its favor is that the underlying action does not involve "bodily injury" as that term is defined in the policy. (USAA Mot. Mem. at 6.) Weight has not argued that any bodily injury occurred.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed

must support the assertion," and can do so in either of two ways:

by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions,

interrogatory answers, or other materials"; or by "showing that

the materials cited do not establish the absence or presence of a

genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P.

56(c)(1).

 "A fact is 'material' when, under the governing

substantive law, it could affect the outcome of the case. A

'genuine issue' of material fact arises if 'the evidence is such

that a reasonable jury could return a verdict for the nonmoving

party.'" Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav.

Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).[5/] Conversely,

where the evidence could not lead a rational trier of fact to

find for the nonmoving party, no genuine issue exists for trial.

See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

---

[5/] Disputes as to immaterial facts do "not preclude summary
judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d
1472, 1483 (9th Cir. 1986).

-7-

574, 587 (1986) (citing <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323; <u>Miller v. Glenn Miller Prods.</u>, 454 F.3d 975, 987 (9th Cir. 2006). The moving party may do so with affirmative evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.[6] Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. <u>See</u> <u>Celotex</u>, 477 U.S. at 324; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).[7]

---

[6] When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. <u>See</u> <u>Miller</u>, 454 F.3d at 987 (quoting <u>C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.</u>, 213 F.3d 474, 480 (9th Cir. 2000)). When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. <u>See</u> <u>id.</u> (citing <u>Celotex</u>, 477 U.S. at 325).

[7] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002);
(continued...)

The nonmoving party must instead set forth "significant probative evidence" in support of its position. <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (quoting <u>First Nat'l</u>, 391 U.S. at 290). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. <u>See</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630–31.[8] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250–51.

**B.**      **<u>An Insurer's Duty to Defend</u>**

Hawaiʻi insurance law provides for a broad duty to defend whenever the pleadings raise a potential for indemnification liability of the insurer to the insured. <u>Burlington Ins. Co. v. Oceanic Design & Constr., Inc.</u>, 383 F.3d

_____

[7] (...continued)
see <u>also</u> <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

[8] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. <u>See</u> <u>Anderson</u>, 477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).

940, 944 (9th Cir. 2004); <u>First Ins. Co. of Hawaii, Inc. v. Hawaii</u>, 665 P.2d 648, 653 (Haw. 1983). "The duty to defend exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed." <u>Burlington Ins. Co.</u>, 383 F.3d at 944; <u>see also</u> <u>First Ins. Co.</u>, 665 P.2d at 653. Furthermore, when "a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." <u>Burlington Ins. Co.</u>, 383 F.3d at 944 (quoting <u>Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.</u>, 872 P.2d 230, 233 (Haw. 1994); <u>see also</u> <u>First Ins. Co.</u>, 665 P.2d at 652.

Hawaiʻi adheres to the "complaint allegation rule." <u>Burlington Ins. Co.</u>, 383 F.3d at 944. Therefore, the duty to defend is limited to situations where the underlying <u>pleadings</u> have <u>alleged</u> a claim for relief which falls within the terms for coverage of the insurance contract. <u>See</u> <u>id.</u> "Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." <u>Id.</u> (quoting <u>Hawaiian Holiday</u>, 872 P.2d at 233). Yet "where the complaint in the underlying lawsuit alleges facts within coverage," an insurer that wishes to avoid providing a defense has a high burden. <u>Dairy Rd. Partners v. Island Ins. Co.</u>, 992 P.2d 93, 117 (Haw.

2000).  The insurer may rely on extrinsic facts to deny a
defense, but only "by showing that _none_ of the facts upon which
it relies might be resolved differently in the underlying
lawsuit."  _Id._; _see also_ Allan D. Windt, 1 Insurance Claims &
Disputes: Representation of Insurance Companies & Insureds § 4:4
(5th ed. 2011) (stating that "[i]nsurers, as a general rule, are
not allowed to refuse to defend on the grounds that they are in
possession of information establishing that the allegations in
the complaint giving rise to coverage are untrue" and noting four
common exceptions to that rule).

     To obtain summary judgment that it has no duty to
defend, an insurer has the burden of proving that there is "no
genuine issue of material fact with respect to whether a
_possibility_ exist[s]" that the insured will incur liability for a
claim covered by the policy.  _Id._ at 107.  In other words, USAA
must prove that it would be _impossible_ for any party in the
underlying lawsuit to prevail against Weight on a claim covered
by the policy.  _See_ _id._ at 107-08.  "All doubts as to whether a
duty to defend exists are resolved against the insurer and in
favor of the insured."  _Id._ at 107.

     An insurer's duty to defend is contractual in nature
and a court must examine the terms of the policy to determine the
scope of the duty.  Commerce & Indus. Ins. Co. v. Bank of Hawaii,
832 P.2d 733, 735 (Haw. 1992).  Insurance policies are "subject

to the general rules of contract construction." <u>Dairy Rd.</u>
<u>Partners</u>, 992 P.2d at 106 (quoting <u>First Ins. Co.</u>, 665 P.2d at
655).  Yet insurance contracts are contracts of adhesion, so they
"must be construed liberally in favor of the insured and any
ambiguities must be resolved against the insurer." <u>Tri-S Corp.</u>
<u>v. W. World Ins. Co.</u>, 135 P.3d 82, 98 (Haw. 2006) (quoting <u>Dairy</u>
<u>Rd. Partners</u>, 992 P.2d at 106-07).  "Put another way, the rule is
that policies are to be construed in accord with the reasonable
expectations of a layperson." <u>Dairy Rd. Partners</u>, 992 P.2d at
107.

## C.        <u>An Insurer's Duty to Indemnify</u>

An insurer's duty to indemnify is narrower than its
duty to defend; even if an insurer breaches its duty to defend,
it may not be required to indemnify its insured. <u>See</u> <u>Dairy Rd.</u>
<u>Partners</u>, 992 P.2d at 118.  To obtain summary judgment that it
owes no duty to indemnify, an insurer is "required only to
establish the absence of a genuine issue of material fact
regarding the question of coverage pursuant to the plain language
of the insurance policies and the consequent entitlement to the
entry of judgment as a matter of law." <u>Id.</u> at 108.

## IV. DISCUSSION

Because an insurer's duties to defend and indemnify its
customers are distinct, the Court will analyze the parties'
arguments concerning defense and indemnification separately.

**A.**         **USAA's Duty to Defend**

The bulk of USAA's arguments concerning whether it has a duty to defend Weight concern one of two issues: first, whether the underlying complaint alleges that the plaintiffs suffered property damage; and second, whether Weight caused any such damage by intentional or purposeful acts.  USAA also raises arguments concerning whether it has a duty to defend claims for injunctive relief or punitive damages.  The Court concludes that based on the allegations in the underlying complaint, USAA owes a duty to defend Weight in the underlying action.

### 1. Property Damage

USAA makes several arguments concerning whether the underlying complaint alleges that Weight's stream diversion caused property damage.  The issues that USAA raises include: (1) whether allegations of property damage appear in the complaint at all; (2) whether surface water is property that can be damaged; (3) whether Weight should be judicially estopped from asserting that the complaint alleges property damage under common law; (4) whether the Hawaiʻi State Commission on Water Resource Management's primary jurisdiction over certain disputes concerning surface water precludes the possibility that Weight will incur liability for property damages; and (5) whether any claims by the underlying plaintiffs for property damage are barred by the statute of limitations.  None of USAA's arguments

have merit.

### a. Whether the Underlying Complaint Alleges Property Damage

USAA first argues that it is impossible that the underlying complaint could lead Weight to incur liability for a covered claim because that complaint "does not involve any 'property damage' as that term is defined in the [policy]." (USAA Mot. Mem. at 6.)  USAA's argument does not survive a cursory glance at the underlying complaint.

The policy defines "property damage" as "physical damage to, or destruction of tangible property, including loss of use of this property." (Policy at 1.)  The underlying complaint alleges that the stream diversion "damaged and continues to damage Plaintiffs' property by deprivation of the water diverted" and that plaintiffs "have been deprived of the use of a substantial portion of [their] land." (Underlying Compl. ¶¶ 7-8.)  As USAA conceded at the hearing, land is tangible property.  The underlying complaint alleges the loss of use of land, and the policy's definition of "property damage" includes loss of use.  That alone renders USAA's argument untenable, but there is more.

The underlying complaint also alleges that "a large portion of Plaintiffs' land [was] denuded of the bubbling stream and the water to nourish plants and fish." (Id. ¶ 6.)  This allegation gives rise to the possibility that the underlying

-14-

plaintiffs' property, including plants and fish, was damaged by diminished water flow. This possibility gives rise to the consequent possibility that Weight will incur liability for a covered claim. See Kawamata Farms, Inc. v. United Agri Prods., 948 P.2d 1055, 1095 (Haw. 1997) (determining that crops were property); Kajiya v. Dep't of Water Supply, 629 P.2d 635, 639 (Haw. Ct. App. 1981) ("[A] human's property . . . may include his pet fish.").

To support its position, USAA cites a number of cases involving economic loss, (USAA Mot. Mem. at 7-8), but those cases are unhelpful because the underlying complaint in this case alleges that physical property was damaged. Two of the cases that USAA cites are particularly illustrative.

In Allstate Insurance Co. v. Leong, Civ. No. 09-00217 SOM-KSC, 2010 WL 1904978 (D. Haw. May 11, 2010), the court held that physical damage to a retaining wall gave rise to a duty to defend, although a related pure economic loss, the resulting diminution of a property's value, did not. See id. at *4-7.[9/]

_____

[9/] The court in Leong determined that "Allstate has no duty to defend or indemnify the Leongs with respect to the diminution in value claim in the state-court complaint." 2010 WL 1904978 at *7. This conclusion seems to conflict with the rule that "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." Burlington Ins. Co., 383 F.3d at 944 (quoting Hawaiian Holiday, 872 P.2d at 233). The conflict may have arisen in part because the Leongs "conceded
(continued...)

-15-

In this case, just as in <u>Leong</u>, the underlying plaintiffs have alleged that physical property was damaged.

In <u>Spendlove v. State Farm Fire & Casualty Co.</u>, No. DA 06-0027, 2006 WL 2708668 (Mont. Sept. 19, 2006),[10/] the underlying complaint alleged that Spendlove had "wrongfully . . . impounded" water on her property. <u>Id.</u> at *1. The underlying plaintiffs claimed that Spendlove's failure "to maintain an unobstructed spillway" caused the "temporary loss of [their] water" that led to their inability to operate its gold mine. <u>Id.</u> Though it is unclear from the court's description, it appears that the underlying decision in <u>Spendlove</u> had to do with the lack of allegations of "physical damage to tangible property." <u>Id.</u> The underlying plaintiff, according to the courts involved, sought to "litigate water right priorities" rather than obtain damages for damage to physical property. Once again, in this case the underlying plaintiffs have alleged that physical property was

_____

[9/] (...continued)
. . . at the hearing [that] Allstate has no duty to defend or indemnify arising out of this purely economic damage." 2010 WL 1904978 at *7. Weight has made no similar concession in this case. (Weight Opp'n at 17.)

[10/] <u>Spendlove</u> begins by stating that it "shall not be cited as precedent." 2006 WL 2708668 at *1. This statement, along with the case's brevity and lack of detail or analysis—which are typical for so-called "memorandum decisions"—undermine its persuasive authority. <u>Id.</u>

damaged.[11]

Neither <u>Leong</u> nor <u>Spendlove</u> (nor any of the cases
involving pure economic loss) supports USAA's argument that it
has no duty to defend Weight. The underlying complaint in this
case gives rise to a possibility that Weight will incur liability
for property damage, not pure economic loss, precluding summary
judgment in favor of USAA concerning its duty to defend. <u>See</u>
<u>Dairy Rd. Partners</u>, 992 P.2d at 107-08.

### b. Whether There Are Private Property Rights in Surface Water

USAA also argues that there is no possibility that the
underlying complaint alleges that there was property damage
because "surface water is <u>not</u> subject to private property
ownership." (USAA Mot. Mem. at 10.) This argument is beside the
point. The lack of private ownership rights to surface water in
Hawaiʻi does not preclude the possibility that the underlying
complaint could possibly give rise to liability for a covered
claim.

First, and most simply, the underlying complaint
alleges that the plaintiffs' fish and plants were damaged, not,
at least exclusively, that their water was damaged. USAA's
reliance on cases concerning private ownership of surface water

---

[11] The Court notes that the conduct alleged in <u>Spendlove</u>
appears to be unintentional, and the resulting damage unexpected,
as the Supreme Court of Hawaiʻi has interpreted those terms. <u>See</u>
<u>Tri-S Corp.</u>, 135 P.3d at 103 n.8; <u>see also</u> <u>infra</u> Part IV.A.2.b.

ignores the alleged damage to these types of property.

Second, rights to the use of water are distinct from ownership rights in water. Regardless of who <u>owns</u> water in Hawaiʻi, property owners may have certain rights to the <u>use</u> of water, and the sovereign's ownership of the water is intended to allow for beneficial use. <u>See</u> <u>Robinson v. Ariyoshi</u>, 658 P.2d 287, 310 (Haw. 1982) ("[W]e comprehend the nature of the State's ownership as a retention of such authority to assure the continued existence and beneficial application of the resource for the common good."); <u>McBryde Sugar Co. v. Robinson</u>, 504 P.2d 1330, 1344 (Haw. 1973) ("[A] proprietor of land adjoining natural water courses has riparian water rights . . . [including] the right to use water flowing therein without prejudicing the riparian rights of others and the right to the natural flow of the stream without substantial diminution and in the shape and size given it by nature.").[12/] The cases involving sovereign ownership of surface water in Hawaiʻi do not preclude actions for property damages related to the deprivation of the use of water. <u>See, e.g.</u>, <u>Anderson v. Hawaiʻi</u>, 965 P.2d 783, 790 (Haw. Ct. App. 1998) (allowing for recovery of damages resulting from a

---

[12/] The Court notes that this case involves USAA's obligations to Weight under the policy, not Weight's and the underlying plaintiffs' rights to the use of water. This order should not be construed as interpreting or applying Hawaiʻi's complex water law except to the limited extent that the order holds that cases like <u>McBryde</u> and <u>Robinson</u> do not render it impossible that Weight could incur liability for a covered claim.

-18-

"continuing diversion of a natural watercourse whereby a lower riparian owner is deprived of its use"); cf. also Haw. Rev. Stat. § 174C-15(c) ("No provision of [the State Water Code] shall bar the right of any injured person to seek other legal or equitable relief against a violator of [the code].").

### c. Whether Weight is Judicially Estopped from Making Certain Claims

In the underlying action, Weight argued that the plaintiffs' complaint failed to state common law claims such as those reserved by McBryde. (USAA Mot. CSF Ex. B at 11-13.) USAA claims that this argument, if successful, would preclude any possibility that Weight will incur liability for damages on a covered claim. Because Weight made this argument, USAA argues that she "is judicially and collaterally estopped from . . . asserting [in this action] that the Underlying Action is not limited to the diversion of surface water." (USAA Reply at 5.)[13] USAA's argument is unpersuasive.

The Hawaiʻi Supreme Court has held, pursuant to "the doctrine of judicial estoppel" that a "party will not be permitted to maintain inconsistent positions or to take a

_____

[13] From USAA's reply memorandum itself, it is not clear which of Weight's arguments in the circuit court make up what USAA calls her "position that the Underlying Action was limited to claims for surface water diversion." (USAA Reply at 5.) At the hearing, USAA clarified that its reply memorandum refers to Weight's argument that the underlying complaint failed to state common law claims.

position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action." Ueoka v. Szymanski, 114 P.3d 892, 903 (Haw. 2005). Weight's argument in this case is neither inconsistent with her argument in the circuit court nor prejudicial to USAA. The doctrine of judicial estoppel is therefore inapplicable.

First, Weight's argument in the underlying action that the plaintiffs failed to state a common law claim is not inconsistent with her argument in this action that she may nonetheless incur liability on such a claim. After all, if Weight's argument below does not persuade the circuit court, then she might incur liability on a covered claim.[14]

Even if there were an inconsistency, judicial estoppel would be inappropriate, because USAA caused Weight to make arguments on her own behalf by refusing to provide a defense. Preventing insured parties from having to take "conflictive

_____

[14] Indeed, the circuit court's order does not appear to rely on whether the underlying plaintiffs stated a common law claim. The order states that "the Commission on Water Resource Management has primary jurisdiction over Plaintiffs' statutory and common law claims." (Weight Mot. CSF Ex. 6 (emphasis added).) The Court presumes that the circuit court would not have directed "common law claims" to the commission if it had determined that there were no common law claims. And it appears to the Court that the underlying complaint does allege common law claims for property damage. See supra Part IV.A.1.a.

position[s]" in their efforts to both obtain insurance coverage and avoid liability for an underlying claim is one of the reasons that the Hawaiʻi Supreme Court has given for evaluating an insurer's duty to defend based on the allegations in the underlying complaint rather than on extrinsic evidence. <u>Dairy Rd. Partners</u>, 992 P.2d at 112; <u>see also</u> <u>Burlington Ins. Co.</u>, 383 F.3d at 944.

Second, Weight's argument in the underlying action is not prejudicial to USAA. That Weight made arguments on her own behalf that USAA could have made in her defense is immaterial to whether USAA had a duty to defend Weight in the first place. If anything, Weight's vigorous defense of the claims against her may ultimately benefit USAA by reducing USAA's exposure to indemnification liability. USAA has not shown that it has been prejudiced by any position that Weight has taken in what appears to have been an effective defense so far. Nor has it shown that it has been prejudiced by the circuit court's decision to deny the underlying plaintiffs' motion for summary judgment and refer certain claims to the Hawaiʻi State Commission on Water Resource Management, the agency that has primary jurisdiction over the dispute. <u>See</u> <u>infra</u> Part IV.A.4 (noting that while the circuit court has referred claims involving property damage to the commission for it to apply its expertise concerning competing uses of water, those claims are still pending in the circuit

court for that court's ultimate determination of any damages following the commission's evaluation).

### d. Whether the Commission's Authority To Impose Fines Precludes Weight from Incurring Liability for Damages

USAA notes that the Hawaiʻi State Commission on Water Resource Management has primary jurisdiction over certain disputes involving water and asserts that "any relief that could be awarded by the [commission] to the underlying plaintiffs would not be 'damages because of property damage' within the meaning of the [policy], but would instead be an administrative 'fine or penalty' that is expressly excluded from coverage under the [policy]." (USAA Mot. Mem. at 11–12; see also USAA Reply at 5.) USAA therefore argues that there is no possibility that Weight will incur liability for property damages.

But while Hawaiʻi's State Water Code does empower the commission to impose fines on violators of "any provision of this chapter, or any rule adopted pursuant to this chapter," it also expressly states that "[n]o provision of this chapter shall bar the right of any injured person to seek other legal or equitable relief against a violator of this chapter." Haw. Rev. Stat. § 174C-15(b)-(c). Thus the commission's "jurisdiction statewide to hear any dispute regarding water resource protection, water permits, or constitutionally protected water interests, or where there is insufficient water to meet competing needs for water"

does not preclude the possibility that Weight may ultimately be held liable for covered property damage in the underlying action. Haw. Rev. Stat. § 174C-10.

### e. Whether the Statute of Limitations Precludes a Duty to Defend

In its reply, USAA raises an argument that any property damage that Weight caused "occurred in 1990, when the stream was initially diverted, or perhaps in 1991, and, in any event, well before the commencement of the two-year statutory limitations period on July 1, 2008." (USAA Reply at 6-7). USAA is correct that any recovery in the underlying action is limited to "damages accruing within the statutory period before the action," and excludes "damages accrued before that period." Anderson, 965 P.2d at 792. But despite USAA's assertion to the contrary, the complaint does not foreclose the possibility that some damage occurred within the statutory period. (Underlying Compl. ¶ 7 ("Defendant's diversion of the water of the stream . . . continues to damage Plaintiffs' property by deprivation of the water diverted.") (emphasis added).) USAA therefore cannot escape its duty to defend on this ground.

### 2. Occurrence and Intentional Acts

The Court now turns to the second major portion of USAA's argument concerning whether it has a duty to defend Weight. USAA contends that any property damage resulted from Weight's intentional or purposeful acts, such that there is no

possibility that there was a covered "occurrence," as that term
is defined in the policy. (USAA Mot. Mem. at 12–18; Policy at
12.)

The policy defines "occurrence" as "an accident,
including continuous or repeated exposure to substantially the
same general harmful conditions, which results, during the policy
period, in bodily injury or property damage." (Policy at 1
(lettering and line breaks omitted).) Given USAA's assumption
for the purpose of this argument that there was property damage,
(USAA Mot. Mem. at 12), the definition gives rise to two
questions: whether the decreased flow of water due to a stream
diversion is "continuous or repeated exposure to substantially
the same general harmful conditions," and whether Weight's
conduct in maintaining the stream diversion is an accident.

### a. Whether Water Deprivation Due to a Stream Diversion Constitutes Continuous or Repeated Exposure to a Harmful Condition

Weight has consistently argued that the policy's
definition of "occurrence" encompasses the long-term deprivation
of water alleged in the underlying complaint, which she
characterizes as continuous or repeated exposure to the harmful
condition of diminished water flow. (See, e.g., Weight Opp'n at
14.) USAA did not address this characterization in any of its
filings. But at the hearing, USAA explained that its argument
relies on the policy's exclusion from coverage of "property

damage caused by the intentional or purposeful acts of any insured, including conduct that would reasonably be expected to result in bodily injury to any person or property damage to any property," not on whether the diminished flow of water was a harmful condition.  (Policy at 12.)

The first question arising from the definition of "occurrence" is therefore not in dispute.  Bearing in mind that ambiguities in insurance contracts are to be resolved in favor of the insured, and in the absence of argument to the contrary, the Court agrees with Weight that diminished flow of water through a stream over time constitutes "continuous or repeated exposure to substantially the same general harmful conditions."  (Policy at 1.)  See Tri-S Corp., 135 P.3d at 98 (quoting Dairy Rd. Partners, 992 P.2d at 106–07).  The Court agrees with USAA that any such "continuous or repeated exposure" must be occasioned by an "accident" to fall within the policy.  Yet as will be discussed in the next section, the Court finds that Weight's alleged wrongful, improper, and illegal maintenance of the stream diversion constitutes an accident.

### b. Whether Weight's Actions Were Intentional or Purposeful

The Court now turns to the question whether Weight's actions were accidental or, instead, fall within the policy's exclusion of coverage for intentional or purposeful acts.  The Supreme Court of Hawai'i has recently restated that when

insurance policies contain exclusions for intentional conduct and expected injuries, those exclusions are limited.

Intent means "volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs." Tri-S Corp., 135 P.3d at 103 n.8 (adopting the interpretation of "standard 'intended or expected' exclusionary clauses" in PSI Energy, Inc. v. Home Ins. Co., 801 N.E.2d 705 (Ind. Ct. App. 2004)). Intent can be proved by "showing an actual intent to injure, or by showing the nature and character of the act to be such that an intent to cause harm to the other party must be inferred as a matter of law." Id.

"Expected" injury means injury that occurred:

> when the insured acted even though he was consciously aware that harm was practically certain to occur from his actions. However, the definition of 'expected' does not exclude [from coverage] harm that the insured 'should have anticipated[.]' Consciousness of the likelihood of certain results occurring is determined by examination of the subjective mental state of the insured.

Id. (emphasis and second alteration in original). Injuries that result from "negligent and reckless conduct" are not "expected injuries" under Tri-S Corp. Id.[15]

---

[15] The exclusion at issue in Tri-S Corp. was for damage that was "expected or intended from the standpoint of the insured." 135 P.3d at 89. This exclusion, which is only partially quoted in Tri-S Corp., is similar to the exclusion in this case. The

(continued...)

In light of <u>Tri-S Corp.</u>, USAA's contention that
Weight's denial of "any intent to cause harm" is "irrelevant to
the issue under Hawaiʻi law" is unfounded.  (USAA Reply at 8.)
Whether Weight intended to cause injury is not only relevant but
also determinative.  <u>See</u> <u>Tri-S Corp.</u>, 135 P.3d at 103 n.8.

USAA argues that the presence of words like
"wrongfully," "improperly," "illegally," and "maintained" in the
underlying complaint precludes the possibility that any liability
that Weight might incur would be covered.  (USAA Reply at 10.)
This argument fails, however, because even if Weight's actions
were somehow wrongful, improper, or illegal, it is not
necessarily the case that she intended or expected damage to
occur in the sense that <u>Tri-S Corp.</u> describes those concepts.
<u>Cf.</u> <u>Tri-S Corp.</u>, 135 P.3d at 102-03 ("In view of the fact that
the underlying complaint alleges a claim for relief . . . that
may be supported by evidence of either intentional or
non-intentional misconduct, it bears repeating that the duty to
defend rests primarily on the <u>possibility</u> that coverage
exists.").

---

[15/] (...continued)
policy here excludes from coverage "bodily injury or property
damage caused by the intentional or purposeful acts of any
insured, including conduct that would reasonably be expected to
result in bodily injury to any person or property damage to any
property."  (Policy at 12.)  Both exclusions appear to be among
"the standard 'intended or expected' exclusionary clauses" that
<u>Tri-S Corp.</u> addressed.  135 P.3d at 103 n.8 (internal quotation
marks omitted).

USAA cites a number of cases in support of its position, but most of these cases are not pertinent. USAA's attempt to equate the maintenance of a decades-old stream diversion with gunshots, assault and battery, sexual assault, and fraud is unpersuasive. The latter types of conduct are intentional, as <u>Tri-S Corp.</u> describes those concepts, and the resulting damages expected. <u>See</u> 135 P.3d at 103 n.8. And in the absence of a contract between Weight and the underlying plaintiffs, the cases that USAA cites involving contract breaches are not germane.

What remains of USAA's cited authorities is a handful of cases that are also distinguishable from this one. In <u>State Farm Fire & Casualty Insurance Co. v. Ramirez</u>, Civ. No. 08-00557 SOM-LEK, 2010 WL 290539 (D. Haw. Jan. 22, 2010), "no damages [were] sought in the state-court suit," and the underlying complaint alleged that the Ramirezes had continued "dumping on their land [and] conducting illegal grading" even after they "began receiving citations for illegal dumping." <u>Id.</u> at *3, *8. The instant case is distinguishable because the underlying complaint does not allege that Weight had been cited for her stream diversion or had otherwise failed to comply with Hawaiʻi's laws and regulations concerning stream diversions. There is therefore a possibility that Weight would not be found to have acted intentionally or to have caused damage that was expected

under <u>Tri-S Corp</u>.

In <u>Continental Insurance Co. v. Hodges</u>, 534 S.W.2d 764 (Ark. 1976), the Supreme Court of Arkansas determined that no "accident" had occurred when an insured, "after pumping . . . water onto their lands for use in irrigating . . . rice crops, drained it into a ditch crossing their lands and cast it upon the lands of" the underlying plaintiffs, resulting in "substantial damage . . . to the[ir] growing crops." <u>Id.</u> at 542, 544. <u>Continental Insurance</u> may well be inconsistent with Hawaiʻi law as set forth in <u>Tri-S Corp.</u>  <u>See</u> <u>Cont'l Ins. Co.</u>, 534 S.W.2d at 544-45 (Harris, C.J., dissenting) ("The great weight of opinion with respect to exclusions such as the one at issue is that the insurer is obligated under the policy unless it is shown that the insured party intended not merely his act, but the injurious consequences of that act.").  Or it may be that "the nature and character of the act" in <u>Continental Insurance</u> was "such that an intent to cause harm to the other party must be inferred as a matter of law." <u>Tri-S Corp.</u>, 135 P.3d at 103 n.8.  In either case, <u>Continental Insurance</u> does not persuade the Court that there is no possibility that Weight will incur liability for a covered claim.

Finally, <u>Martin Marietta Materials Sw., Ltd. v. St. Paul Guardian Ins. Co.</u>, 145 F. Supp. 2d 794 (N.D. Tex. 2001), is distinguishable based on the rationales for distinguishing both

of the above cases. In <u>Martin Marietta</u>, the plaintiff had,
"without a valid water permit, diverted [a] creek," and in doing
so, had "deprived [the underlying plaintiff] of water which it
needed to operate" its downstream sand and gravel company. <u>Id.</u>
at 796. As a matter of "[p]ublic policy," the court found that
the injuries "predictably and naturally followed from the
intentional upstream diversion." <u>Id.</u> at 799.

The Court is not persuaded by the reasoning of <u>Martin
Marietta</u> that simply because there was a permit system in place,
the insured must have expected or intended that any diversion
would cause harm to downstream landowners, at least as <u>Tri-S
Corp.</u> describes those concepts. To the extent that following
<u>Martin Marietta</u> would result in a conflict with <u>Tri-S Corp.</u>, the
Court declines to follow it. Yet this decision creates no
conflict with <u>Martin Marietta</u>, because like <u>Ramirez</u>, <u>Martin
Marietta</u> is distinguishable from the instant case because the
underlying complaint here does not allege that Weight failed to
comply with laws and regulations concerning water usage.

### 3. Injunctive Relief and Punitive Damages

USAA's last group of arguments relates neither to
whether property damage was alleged nor to whether an occurrence
happened. USAA argues that it has no duty to defend the claims
in the underlying complaint for injunctive relief and punitive
damages. (USAA Mot. Mem. at 18–19.) But when a suit raises a

potential for indemnification liability of the insured for even
one claim, the insurer has the duty to accept the defense of the
entire suit even though other claims of the complaint may fall
outside the policy's scope.  See Burlington Ins. Co., 383 F.3d at
944.  USAA's argument is therefore unavailing.

### 4. The Scope of USAA's Duty to Defend

USAA argued at the hearing that if it does owe a
defense to Weight, its duty to defend extends only to the
underlying action in the circuit court.  USAA claims that its
duty to defend does not extend to any proceeding related to the
underlying action before the Hawaiʻi State Commission on Water
Resource Management.  The basis for USAA's argument is its
position that because the commission cannot award damages, any
proceeding before the commission cannot possibly lead to
liability on a covered claim.[16]

The Court disagrees, because the commission's
evaluation of the "dispute regarding . . . insufficient water to
meet competing needs for water" is integral to the underlying
claim for damages in the circuit court.  Haw. Rev. Stat. § 174C;
cf. Burlington Ins. Co., 383 F.3d at 944 ("[T]he insurer has a
duty to accept the defense of the entire suit even though other
claims of the complaint fall outside the policy's coverage.").

----

[16] At the hearing, Weight agreed with USAA that the
commission has no authority to award damages.  The Court assumes
arguendo that the parties are correct.

The circuit court's order denying the underlying plaintiffs' motion for summary judgment stated that the commission "has primary jurisdiction over [those plaintiffs'] statutory and common law claims." (Weight Mot. CSF Ex. 6.) The primary jurisdiction doctrine "applies to a claim that is originally cognizable in the courts but which requires the resolution of issues that are 'within the special competence of an administrative agency.'" Jou v. Nat'l Interstate Ins. Co. of Hawaii, 157 P.3d 561, 567 (Haw. Ct. App. 2007) (quoting Reiter v. Cooper, 507 U.S. 258, 268 (1993)). The doctrine "allows [a] court to 'refer' an issue to the administrative agency before proceeding with the suit." Id.

The circuit court's referral of the underlying action to the commission does not change the fundamental character of the underlying action. It is still an action seeking damages for property damage, and it is still pending in the circuit court (although it has been stayed by stipulation of the parties). (Weight Mot. CSF Ex. 6; USAA Mot. CSF Ex. C.) The circuit court has referred the claims for the commission to apply its expertise concerning competing uses of water. The commission's evaluation will ultimately impact whether the underlying plaintiffs obtain damages in the circuit court.

USAA's obligation to defend Weight against the underlying claims for damages extends to the evaluation of the

underlying parties' competing interests in water use because a ruling in Weight's favor concerning her stream diversion would augment her defense against the claims for property damages. There is no apparent reason that USAA should be relieved of its obligation to defend simply because an agency with greater expertise will conduct that evaluation.

The Court concludes that USAA owes Weight a defense in the underlying action pursuant to the terms of the policy, including representation in any related proceeding before the commission. Weight is awarded the reasonable expenses of her defense, so far, of the underlying action, including any proceedings that have taken place before the commission. USAA is ordered to assume the defense of the action (in all fora) going forward.

### 5. Attorneys' Fees in This Action

Under Hawaiʻi law, "[w]here an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder . . . shall be awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy." Haw. Rev. Stat. § 431:10-242. USAA denied the provision of a defense to Weight, but the Court has determined that USAA is obligated to provide that defense. Weight is therefore awarded its reasonable fees and costs in this action. See Commerce & Indus. Ins. Co., 832

P.2d at 737 (confirming the award of attorneys' fees under

§ 431:10-242 in an action where an insurer contested its duty to

provide a defense and was ordered to provide one).

**B.**     <u>**USAA's Duty to Indemnify**</u>

Although the Court grants Weight's motion and denies

USAA's motion insofar as those motions involve USAA's duty to

defend Weight, the Court will deny, with leave to refile, both

parties' motions insofar as they concern indemnification.  USAA's

duty to defend depends on the <u>possibility</u> that Weight will incur

liability on a covered claim.  That possibility exists, so USAA

must defend Weight.  Yet there are genuine issues of material

fact as to whether USAA must indemnify Weight, because the

possibility is just that.  For example, it may ultimately be

found that Weight did intend to cause property damage under the

<u>Tri-S Corp.</u> definition of intent, or that the plaintiffs in the

underlying action have not suffered any damages within the

statutory period.  These genuine issues of material fact preclude

granting summary judgment concerning indemnification to either

party.[17/]

**C.**     <u>**Weight's Bad Faith Claim**</u>

_____

[17/] Weight has argued, citing cases from other jurisdictions,
that USAA's failure to provide a defense renders USAA liable for
indemnification as well.  (Weight Mot. Mem. at 13-14; Weight
Opp'n at 17-18.)  Under Hawai'i law, however, an insurer's
failure to provide a defense does not necessarily lead to
liability for indemnification.  <u>See</u> <u>Dairy Rd. Partners</u>, 992 P.2d
at 118.

-34-

Pursuant to the procedure stipulated to by the parties and approved by the Court, having denied summary judgment to USAA on Count I of the complaint, the Court will defer ruling on USAA's motion for summary judgment on Count II of the complaint and will continue the hearing as to that motion. The parties informed the Court at the hearing that they would address the scheduling of any discovery and filings concerning Count II at the next scheduled hearing before the magistrate judge. They are instructed to do so.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff Leslie-Aina Weight's Motion for Partial Summary Judgment; and DENIES in part and CONTINUES in part Defendant USAA Casualty Insurance Co.'s Motion for Summary Judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, March 22, 2011.



_Alan C. Kay_
Alan C. Kay
Sr. United States District Judge

Weight v. USAA Casualty Insurance Co., Civ. No. 10-00603 ACK-BMK: Order Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment and Denying in Part and Continuing in Part Defendant's Motion for Summary Judgment